UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:16-cr-00163-JHR |
| | ) | |
| THOMAS R. TURNER | ) | |
| | ) | |
| | ) | |

*ORDER ON DEFENDANT'S MOTION TO DISMISS*

On November 22, 2016, the defendant, a member of the United States Navy, was charged in a one-count misdemeanor information with operating a motor vehicle while under the influence of intoxicants, in violation of 18 U.S.C. §§ 7(3) and 13, and 29-A M.R.S.A. § 2411(1-A)(A). He now moves to dismiss the information under the theory that his previous naval administrative adjudication for the same offense bars this prosecution under the Fifth Amendment's Double Jeopardy Clause. Because the non-judicial punishment proceeding to which the defendant was subjected was a noncriminal proceeding, the motion is **_DENIED_**.

### I.     Factual Background

The defendant serves in the Navy and was stationed at the Portsmouth Naval Shipyard on January 23, 2016, when he was arrested by military police for operating a motor vehicle under the influence of intoxicants. Defendant's Motion to Dismiss ("Motion") (ECF No. 14) at [1]. The defendant's case was adjudicated through a non-judicial punishment ("NJP") proceeding. *Id*. at [2]. The defendant's commanding officer found him guilty of Article 111 of the Uniform Code of Military Justice, a prohibition on operating a motor vehicle while intoxicated. Government's Opposition to Defendant's Motion to Dismiss ("Opposition") (ECF No. 16) at 1. The defendant's

NJP sanctions included a nine-month reduction in rank, with a resultant approximately $200 per-month wage reduction, restriction to his barracks for 45 days, and the assignment of an extra watch from 11 p.m. to 1 a.m.  Motion at [1].  The defendant was later summonsed to this court, and the U.S. Attorney's Office began the instant proceedings.  *Id*.

## II.     Discussion

With limited exceptions, in every case where a member of the military service is charged with a criminal offense through the military justice system, he or she has the right to a trial by court-martial.  10 U.S.C. § 815.  A service member may also elect to waive his or her formal court-martial rights and consent to the NJP procedure, which can afford a defendant a less harsh punishment.  *Id*.  Before he or she chooses this path, however, he or she must be informed of his or her right to speak with counsel about the rights and benefits he or she forfeits by foregoing the court-martial process.  *See United States v. Booker*, 5 M.J. 238 (C.M.A. 1977).  This recitation of rights, the so-called *Booker* warnings, ensures that the service member is knowingly and voluntarily submitting to the NJP process.  Where a defendant elects to have his or her case proceed in the traditional court-martial procedure, a conviction therein will bar a latter criminal proceeding based on the same facts in civilian court, under the Fifth Amendment's Double Jeopardy Clause.  *See Grafton v. United States*, 206 U.S. 333, 345-48 (1907).  An NJP proceeding has no such effect.  *See United States v. Reveles*, 660 F.3d 1138 (9th Cir. 2011).

It is uncontested that that the defendant here was not given his *Booker* warnings before electing to proceed with the NJP procedure, nor was he given the opportunity to consult with counsel, or request a court-martial[1].  The defendant's motion to dismiss argues, in essence, that

---

[1] The defendant raises the so-called "vessel exception," wherein a service member does not have a right to demand a court-martial if they are stationed on, or attached to, a military vessel. Because I do not find that the defendant's remedy for being denied access to, or information about, court-martial proceedings is a bar to civilian court criminal proceedings, I need not reach the merits of the vessel exception issue.

2

because he was never informed of his right to consult with counsel about his decision to waive court-martial proceedings, the NJP process to which he was subjected should be deemed the legal surrogate for a court-martial proceeding. That, in turn, would prevent the instant civilian court criminal proceeding under the Double Jeopardy Clause. This argument is unpersuasive.

In support of his proposition, the defendant cites to the case of five consolidated defendants from the Eastern District of Virginia, *United States v. Crank, et al.*, 2012 WL 913626 (E.D. Va. 2012). In the decision, the court granted the defendants' motions to dismiss their civilian criminal proceedings when it found that the advice received by three of the five defendants from their independent counsel before electing the NJP process was so deficient in relaying the risks and benefits of waiving court-marital proceedings that their waivers were invalid. *Id*. at *7. The remaining two defendants were not provided the opportunity to consult with attorneys at all – much like the defendant here – and the court presumed that, as with their three co-defendants, any advice that they would have received would have been similarly deficient. *Id*. at *8. The court found that the appropriate remedy for the defective waiver was to bar the government from subsequently trying the defendants for the same offense in a civilian criminal proceeding, and it granted the motions.

In its opposition to the defendant's motion, the government cites to the Ninth Circuit's opinion in *United States v. Stoltz*, 720 F.3d 1127 (9th Cir. 2013). There, the court found that the Double Jeopardy Clause was not a bar to a civilian prosecution after a service member had already been punished for the same conduct through the NJP process. Like here, the defendant in *Stoltz* was not informed of his rights to consult with counsel before electing to proceed with the NJP process. Nevertheless, the court reasoned that the NJP process is a noncriminal proceeding, and, thus, a service member whose conduct is adjudicated through it has, at its completion, still not

been charged with or prosecuted for a crime[2]. *Id*. at 1132.  Only a previous criminal proceeding may bar a later one under the Double Jeopardy Clause. *Id*. at 1131. The *Stoltz* court noted:

> [The defendant's] novel theory - that the Double Jeopardy Clause prohibits criminal prosecution if the defendant could have been, but was not, criminally charged for the same conduct in a prior, separate action – lacks any legal support and cannot be squared with the Supreme Court authority concerning when jeopardy attaches.

*Id*. at 1132.

Thus, the court reasoned, even assuming that the failure to give *Booker* warnings rendered the NJP proceeding defective, the proper remedy was not to bar a future civilian criminal prosecution, but for the defendant to seek to vacate the NJP proceeding.  The court noted that a service member could do so by applying to the Board for Correction of Military Records (BCMR), from which an appeal could be taken to an Article III court. *Id*. at 1133.  I agree with this reasoning.[3]

Finally, the defendant's motion to dismiss argues that a 1985 "Memorandum of Understanding Between the Department of Justice and the Department of Defense Relating to the Investigation and Prosecution of Certain Crimes" bars the defendant's prosecution in this matter. The defendant claims that the Memorandum "makes clear that offenses like OUI," when committed by service members on a military installation "are to be handled solely in the military justice system and that . . . such a case should finally conclude if NJP is imposed."  Motion at [4].

---

[2] The *Stoltz* court cites to the *Reveles* decision holding that the NJP process is "an administrative method of dealing with the most minor offenses." *U.S. v. Reveles*, 660 F.3d at 1140 (9th Cir. 2011) (internal quotations and citations omitted).  In so finding, the *Reveles* court analyzed the Congressional intent behind creating the NJP process and whether the NJP process was so punitive as to actually function as a criminal penalty.  The court concluded that a case adjudicated through both the NJP process and a civilian criminal proceeding does not run afoul of the Double Jeopardy Clause because the NJP process is a noncriminal proceeding.

[3] As the government notes in its Opposition, the court in *Stoltz* was made aware of the decision in *Crank* in the parties' written submissions.  *See* Opposition at 7.  Although *Crank* was not discussed in the opinion in *Stoltz*, the opinion stands as a refutation of its logic and holding.

The defendant has provided no authority to suggest that this Memorandum is in any way binding on this court, and it is not, by its own terms. As the government points out in its Opposition, the first paragraph of the Memorandum, not quoted by the defendant, states that the document is "not intended to confer any rights, benefits, privileges or form of due process procedure upon individuals . . . or other persons or entities." Opposition at 8. The First Circuit has also spoken definitively on a similar 1984 Memorandum concerning courts-martial, stating that "[t]hese internal guidelines . . . were promulgated for purposes of administrative convenience, and defendants cannot rely on them to deprive the district court of jurisdiction." *United States v. Mariea*, 795 F.2d 1094, n.22 (1st Cir. 1986). Thus, the defendant's second argument is also without merit.

Accordingly, the defendant's motion to dismiss is **<u>DENIED</u>**.

### <u>NOTICE</u>

*In accordance with Federal Rule of Criminal Procedure 59(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 26th day of March, 2017.

                                                        /s/ John H. Rich III
                                                        John H. Rich III
                                                        United States Magistrate Judge